**Frank C. McAULEY,
Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**John A. METZGER and H. A. Waggoner, Plaintiffs-Appellants,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**Lew Schuek THUEN, a/k/a Saxon Lew, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**Clifford E. WARLING,
Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**Nos. 74–1354 and 74–1358 to 74–1360.**

United States Court of Appeals,
Ninth Circuit.

Nov. 5, 1975.

W. V. Clodfelter (argued), Seattle, Wash., for plaintiff-appellant in 74–1354.

Harvey S. Poll (argued), Guttormsen, Scholfield & Stafford, Seattle, Wash., for plaintiffs-appellants in 74–1358, 74–1359, 74–1360.

William A. Friedlander (argued), U.S. Dept. of Justice, Washington, D. C., for defendant-appellee.

* Honorable Raymond E. Plummer, United States District Judge, for the District of Alaska, sitting by designation.

## OPINION

Before WRIGHT and CHOY, Circuit Judges, and PLUMMER,* District Judge.

PLUMMER, District Judge, Sitting by Designation.

Taxpayers were the five partners of an unincorporated partnership doing business as the Sorrento Hotel. After an unsuccessful real property arrangement under Chapter XII of the Bankruptcy Act, the partnership was adjudicated bankrupt on July 14, 1964. On August 18, 1964, plaintiffs filed a "Partnership Petition" requesting that the partnership and the partners be adjudged bankrupt. It was so ordered. Between November, 1964 and September, 1966, the partners obtained their discharges.

The United States received notice of these proceedings. It assessed the taxpayers for unpaid taxes on July 23, 1963; December 21, 1964; and April 8, 1966. The total assessed was $28,026.73 and covered income, excise and withholding of income taxes, and taxes due under the Federal Insurance Contributions Act and Federal Unemployment Taxes Act. Proofs of Claim of these assessments were timely filed in the bankruptcy proceeding against the partnership but not against the individuals. Bankruptcy Act § 5g, 11 U.S.C. § 23g. Nevertheless, the government received various distributions reducing the amount now claimed to be due to $18,125.54.

Prior to the termination of the bankruptcy proceedings in March of 1972 the United States attempted to collect the unpaid part of its claim directly from the taxpayers. After making a partial payment and following the proper procedures taxpayers commenced this suit for a refund on June 2, 1971. In its Answer the United States did not counterclaim for the balance of the taxes due, but by its Amended Answer filed May 16, 1973, it did so.[1] The District Court dismissed

1. No issue has been made of the question of whether the Amended Answer and Counterclaim relate back. *Stoner v. Terranella,* 372

plaintiffs' claim and granted judgment to the United States for $18,125.54 plus interest. Plaintiffs appealed on the single issue of the running of the 6 year statute of limitation on collection from the date of assessment. 1954 Internal Revenue Code § 6502(a).[2] The United States contends that the statute of limitations was stayed during the entire time the bankruptcy estate was open until March, 1972, so that the normal 6 year period is inapplicable.

The basis for the government's argument that the statute of limitations was stayed during the entire period that the bankruptcy estate was open is § 6503(b)[3] of the Code. It provides that the period of limitations on collection after assessment "shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any

proceeding before any court of the United States . . ., and for 6 months thereafter." Literally the statute seems to call for a factual determination of whether the assets of the taxpayer are in the control or custody of the bankruptcy court. The Internal Revenue Service seems to have adopted this interpretation in Reg. § 301.6503(b)–1[4] which provides that the statute of limitations is suspended "[w]here all or substantially all of the assets of a taxpayer are in the control or custody of the court . . ." Certainly a factual determination is required to determine if "all or substantially all" of the assets of the taxpayer are under the control of the bankruptcy court. Thus, the government's regulations appear to be inconsistent with its position in this case that the statute of limitations is stayed as a matter of law until the bankruptcy estate is closed.

F.2d 89 (6th Cir. 1967), holds that the amendment is controlled by Fed.R.Civ.P. 13(f) and does not relate back. *Compare: A. J. Industries, Inc. v. United States Dist. Ct.*, 503 F.2d 384, 388 (9th Cir. 1974).

2. Section 6502(a) provides:

   *Collection after assessment*
   (a) *Length of period.*—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
   (1) within 6 years after the assessment of the tax, or
   (2) prior to the expiration of any period for collection agreed upon in writing by the Secretary or his delegate and the taxpayer before the expiration of such 6-year period (or, if there is a release of levy under Section 6343 after such 6-year period, then before such release).
   The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. The period provided by this subsection during which a tax may be collected by levy shall not be extended or curtailed by reason of a judgment against the taxpayer.
   The last quoted sentence was added by the Federal Tax Lien Act of 1966.

3. Section 6503(b) provides:

   *Suspension of running of period of limitation*
   (b) *Assets of taxpayer in control or custody of court.*—The period of limitations on

collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer (other than the estate of a decedent or of an incompetent) are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter.
   The material in parentheses was stricken by the Federal Tax Lien Act of 1966.

4. Regulation § 301.6503(b)–(1) provides:
   Where all or substantially all of the assets of a taxpayer are in the control or custody of the court in any proceeding before any court of the United States, or of any State of the United States, or of the District of Columbia, the period of limitations on collection after assessment prescribed in Section 6502 is suspended with respect to the outstanding amount due on the assessment for the period such assets are in the control or custody of the court, and for 6 months thereafter. In the case of an estate of a decedent or an incompetent, the period of limitations on collection is suspended only for periods beginning after November 2, 1966, during which assets are in control or custody of a court, and for 6 months thereafter.
   This regulation was not promulgated until 1971. However, it is the first interpretation of Section 6503(b) because the prior regulation did no more than repeat the words of the statute. Accordingly, we consider this regulation in resolving this case.

Nevertheless, one court has upheld the position taken by the government in this litigation. *United States v. Malkin,* 317 F.Supp. 612 (E.D.N.Y.1970). A contrary result was reached in *United States v. Verlinsky,* 459 F.2d 1085 (5th Cir. 1972). Because of these conflicting interpretations we feel that a review of the other sections of the Code controlling the treatment of bankrupt taxpayers is required before construing § 6503(b).

These sections are §§ 6871–6873.[5] Section 6871 requires the immediate assessment of deficiencies upon the bankruptcy of the taxpayer. The validity of the assessment is to be determined by the Bankruptcy Court unless there is a proceeding already pending in the Tax Court, in which event dual proceedings are possible. The purpose of this section is to avoid the delay that would result if

the usual assessment procedures under §§ 6212 and 6213 of the Code were followed, and to have the determination of the validity of the tax claim in the same court that has jurisdiction over the assets of the taxpayer. *Abel v. Campbell,* 334 F.2d 339 (5th Cir. 1964); *Samuel J. King,* 51 T.C. 851 (1969). Section 6872 together with the applicable regulation requires that the trustee give notice to the secretary of his qualifications as such, and provides that the period of limitation on making assessments is suspended for the period from the institution of the proceedings until 30 days after notice is received from the trustee. The suspension may not exceed 2 years however. Section 6873 states that the unpaid portion of claims allowed in bankruptcy will be paid by the taxpayer after the termination of such proceeding. The section also provides in the cross

5. Section 6871 provides:

*Claims for income, estate, and gift taxes in bankruptcy and receivership proceedings*

(a) *Immediate assessment.*—Upon the adjudication of bankruptcy of any taxpayer in any liquidating proceeding, the filing or (where approval is required by the Bankruptcy Act) the approval of a petition of, or the approval of a petition against, any taxpayer in any other bankruptcy proceeding, or the appointment of a receiver for any taxpayer in any receivership proceeding before any court of the United States or of any State or Territory or of the District of Columbia, any deficiency (together with all interest, additional amounts, or additions to the tax provided by law) determined by the Secretary or his delegate in respect of a tax imposed by subtitle A or B upon such taxpayer shall, despite the restrictions imposed by section 6213(a) upon assessments, be immediately assessed if such deficiency has not theretofore been assessed in accordance with law.

(b) *Claim filed despite pendency of Tax Court proceedings.*—In the case of a tax imposed by subtitle A or B claims for the deficiency and such interest, additional amounts, and additions to the tax may be presented, for adjudication in accordance with law, to the court before which the bankruptcy or receivership proceeding is pending, despite the pendency of proceedings for the redetermination of the deficiency in pursuance of a petition to the Tax Court; but no petition for any such redetermination shall be filed with the Tax Court after the adjudication of

bankruptcy, the filing or (where approval is required by the Bankruptcy Act) the approval of a petition of, or the approval of a petition against, any taxpayer in any other bankruptcy proceeding, or the appointment of the receiver.

Section 6872 provides:

*Suspension of period on assessment*

If the regulations issued pursuant to section 6036 require the giving of notice by any fiduciary in any proceeding under the Bankruptcy Act, or by a receiver in any other court proceeding, to the Secretary or his delegate of his qualification as such, the running of the period of limitations on the making of assessments shall be suspended for the period from the date of the institution of the proceeding to a date 30 days after the date upon which the notice from the receiver or other fiduciary is received by the Secretary or his delegate; but the suspension under this sentence shall in no case be for a period in excess of 2 years.

Section 6873 provides:

*Unpaid claims*

(a) *General rule.*—Any portion of a claim for taxes allowed in a receivership proceeding or any proceeding under the Bankruptcy Act which is unpaid shall be paid by the taxpayer upon notice and demand from the Secretary or his delegate after the termination of such proceeding.

(b) *Cross references.*—

(1) For suspension of running of period of limitations on collection, see section 6503(b).

(2) For extension of time for payment, see section 6161(c).

reference subsection that "[f]or suspension of running of period of limitations on collection, see section 6503(b)."

The problems in construing Section 6503(b) arise in part because it was designed to have general application. See 3 USCCAN 4017, 4562 (1954). As such, general language was used. "Control or custody" is nowhere defined. Nor is "assets of the taxpayer." It has been left to the courts to construe these words. Another difficulty is that the statutes are at least partially circular. Thus, § 6503(i), formerly § 6503(h), cross references one to § 6873 for the suspension of the statute of limitations during bankruptcy, but § 6873(b) sends one back to § 6503(b). These considerations have prompted courts to note that "[t]he section leaves much to be desired in definiteness and clarity." *Verlinsky, supra,* 459 F.2d at 1087, quoting from *United States v. McCann,* 259 F.Supp. 632, 633 (S.D.Cal.1966). With this in mind, we consider the different possible interpretations of the Statute.

■ A literal construction of the statute would make the suspension of the statute of limitations depend on the control of the bankruptcy court of the taxpayer's assets. This would be a factual determination. It would be a difficult one. Under the regulations the question would be whether the bankruptcy court did or did not control "substantially all of the assets of the taxpayer." Reg. § 301.6503(b)-1. It would depend on not only what assets the bankruptcy court controlled but also how much property the bankrupt had been able to acquire after bankruptcy. This inquiry would take place up to six years after the closing of the bankruptcy estate. We would be reluctant to introduce such complex factual questions into a statute of limitations question even absent some express Congressional policy. Here, however, Congress has disapproved of similar inquiries. Prior to the 1966 Federal Tax Lien Act, § 6503(c) of the Code provided

for suspension of the period of limitations where collection of the tax was hindered or delayed because the taxpayer's assets were outside of the United States. The Section was changed by the Act to suspend the period of limitations during the time that the taxpayer is outside the country. The reason for the change was to eliminate from consideration the difficult factual problem of determining when collection is hindered because the assets of the taxpayer are outside of the country.[6] Thus, Congress expressed a policy against introducing difficult factual determination into statute of limitations questions. This Court will not incorporate into § 6503(b) the very problem that Congress sought to avoid in § 6503(c). Therefore, it rejects a construction of § 6503(b) depending on the factual determination of location or custody or control of the taxpayer's assets.

■ This brings us to the government's contention that the period of limitations on collection is suspended from the time the bankruptcy estate is opened until it is closed. *United States v. Malkin, supra,* accepted this theory. *United States v. Verlinsky, supra,* rejected it. We also reject it. Several considerations enter into our decision.

First, such a rule is capable of staying the period of limitations for unjustifiably long periods. In this case the bankruptcy lasted 9 years. Adding to this the normal 6 year period of limitations would allow the government 15 years in which to collect its claim. This harsh result is inconsistent with the Congressional policy expressed in § 6872 to not unduly extend the statute of limitations during bankruptcy. That section limits the suspension of the period of limitations on assessments to 2 years, a relatively short period of time. One would not expect Congress to protect the taxpayer against undue delay in assessment, but allow unlimited delay in collection.

This distinction is even more unlikely because, as discussed *infra,* the govern-

**6.** Senate Report No. 1708, 89th Cong., 2d Sess., 3 U.S.Code Cong. & Admin.News pp. 3722, 3746 [1966].

ment is not hindered in its collection by bankruptcy and may collect from the exempt property of the bankrupt during the bankruptcy proceeding. The limited suspension under § 6872 arises because the trustee neglects to inform the Secretary of his appointment as trustee of the bankruptcy estate, but the supposed unlimited suspension under § 6503(b) apparently arises because the *government* fails to follow remedies clearly open to it outside of bankruptcy to collect its claim. Thus, the government is in the position of arguing that where the trustee is at fault the maximum suspension is 2 years but where the government itself is at fault there is no limit on the suspension period. For us to so construe the statute Congress would have to speak more clearly than it has here.

Another ground for rejecting the government's theory is that there is no reason to stay the running of the period of limitations for the entire bankruptcy proceeding. The legislative history of the 1966 Federal Tax Lien Act makes clear that the justification for staying the running of the period of limitations is that collection efforts are hindered by bankruptcy. See *Verlinsky, supra.* But as to the bankruptcy estate, tax claims have priority, Bankruptcy Act § 64(4), 11 U.S.C. § 104a(4), and as to the bankrupt's exempt property the government may collect from it despite the pendency of the bankruptcy proceeding. Reg. § 301.6871(a)–2(a); *Samuel J. King,* 51 T.C. 851 (1969); *Salsbury Motors v. United States,* 210 F.2d 171, 174 (9th Cir. 1954). Since collection is not hindered, at least by the above considerations, there is no need to stay the statute of limitations.

■ The right of the government to collect from the taxpayer during bankruptcy requires reconsideration of one of the assumptions in the case that supports the government. *United States v. Malkin,* 317 F.Supp. 612 (E.D.N.Y.1970). There the district court concluded that since § 6873 authorized collection "after the termination of the proceeding," the statute of limitations should be suspend-ed until this point. Implicit in this is the assumption Section 6873 controls the timing of government collection remedies, and that prior to the termination of the proceeding the government cannot collect its claim from the taxpayer. As we have seen though, that assumption is incorrect. The United States can proceed against the bankrupt during the proceeding. Since the premise upon which the conclusion rests fails, so must the conclusion. A different interpretation of § 6873 is that it is designed to give collateral estoppel consequences to the allowance of the claim in bankruptcy. *United States v. Coast Wineries, Inc.,* 131 F.2d 643, 648 (9th Cir. 1942); *Walley v. United States,* 259 F.2d 579 (9th Cir. 1958). But as made clear in *Walley,* the fact that collateral estoppel applies does not mean that the statute of limitations is inapplicable. We think that the construction of § 6873(a) that it only incorporates collateral estoppel consequences into the allowance of a claim is more reasonable than the one adopted in *Malkin.* This is especially true because § 6873(b) directs one to § 6503(b) for the statute of limitations problem, not to § 6873(a) which was relied on in *Malkin.*

■ Because of the reasons stated above, we reject the government's interpretation of § 6503(b). In doing so, we agree with *Verlinsky,* that we must be guided by the purpose to suspend the running of the period of limitations during the time that collection efforts are hindered. Therefore, we look to the hindrance caused by bankruptcy on tax collection efforts.

■ The primary limitation on the collection rights of the United States is caused by the confusion created by the dividing of the bankrupt's property into exempt and non-exempt estates, and the filing of creditors' claims against the estate. During that time there is a period of uncertainty as to whether there will be enough assets to compensate the creditors' claims. The period during which property is determined to be exempt or not is fairly short. See Bankruptcy Rule

403. However, the time for filing claims is longer. Usually they must be filed within six months of the first creditors' meeting. Bankruptcy Act § 57n. During this time the Government does not know if collection of its tax claim is in jeopardy. Also, prior to the filing of the tax claim the taxpayer has not had an opportunity to contest the assessment. *Jamy Corporation v. Riddell,* 337 F.2d 11, 13 (9th Cir. 1964). *Samuel J. King,* 51 T.C. 851 (1969). Suspending the statute of limitations during this period of uncertainty allows the government time to evaluate its rights as compared to other creditors, and in addition allows the taxpayer the opportunity to contest the government's assessment. We hold that the statute of limitations is suspended until six months after the date of the first creditors meeting, and for an additional six months thereafter as provided by Section 6503(b).

Thus, under our construction of the statute, the *assets of the taxpayer* are not in the control or custody of the bankruptcy court after the time for filing of claims in the bankruptcy proceeding has passed. They cease to be his assets at this point. In *Verlinsky, supra,* the Fifth Circuit held that the assets in the bankruptcy estate ceased to be assets of the taxpayer at the time of discharge. We have followed the same approach, but have chosen a different time. We feel that our choice is more realistic when considering the problems faced by the government and the taxpayer. Both are concerned with whether there are enough assets in the estate to cover the claims made against the estate. If there are not, as is the usual case in bankruptcy, the assets are for all practical purposes no longer the taxpayer's. If there are sufficient assets, then our problem evaporates because collection of the taxes is assured. For purposes of the statute of limitations where a generally applicable easily applied rule is necessary, we think that our construction of

§ 6503(b) suspending the statute of limitations until the time for filing claims in bankruptcy has elapsed and for 6 months thereafter is the most reasonable construction.[7]

The government says that this will produce horrible results. It argues that if the statute is not stayed pending bankruptcy, the tax collector will be unable to wait and attempt to satisfy its claim first from the bankrupt's estate, but will instead be forced to immediately seek to collect its claim from the bankrupt's exempt property. The answer to this is that under § 6502(a)[8] the taxpayer can agree to suspend the running of the statute of limitations. If he wants to keep the statute running, he can do so at his peril. Therefore, the taxpayer has the option of avoiding the horrible result the government foresees. The choice is his. We see no problem.

In this case the government has argued that it has unhindered collection rights during bankruptcy but that the statute of limitations is stayed until the estate is closed. There is no reason for the tax collector to have it both ways. Either the statute should be stayed during the bankruptcy, and tax collections from the taxpayer be precluded, or the statute should not be stayed and collection be permitted. The virtue of the first alternative is that it requires that the tax claims first be satisfied out of the bankrupt's estate, leaving only the remainder of the claim to be collected from the after-acquired property. It has a disadvantage, though, in that it delays the running of the statute of limitations for long periods in some cases. The virtue of the second interpretation is that it keeps the statute of limitations running. It has the disadvantage of forcing the government to attempt to collect its tax claims from the exempt property of the bankrupt prior to the closure of the estate, but it allows the bankrupt to avoid this result by agreeing to suspend the statute of limitations under § 6502(a)(2).

---

7. This opinion does not deal with he case of a no-asset bankruptcy, where there may be no reason to suspend the statute of limitations at all.

8. See note 2, *supra.*

We think Congress would and did prefer the latter solution. It protects the government's interest in tax collection, carries out the purposes of the Bankruptcy Act, and allows the taxpayer some flexibility.

We reverse and remand to the district court for a determination of the last date on which claims could be filed. The statute of limitations was suspended until 6 months after that date. Further proceedings should be held consistent with this opinion.